Judge Rovner, are you with us? I am. All right. Wish I was closer. Wish I really were. All right. We move to the fifth case this morning. Henderson v. Shulkin. Mr. Holloway. Good morning. May it please the court. My name is Philip Holloway and I represent the District Court. Mr. Shulkin has been employed by the VA, which I will call the agency for the remainder of my argument here for 32 years. For the last 10, he has functioned as a detective at the VA, or the agency's Heinz facility, Heinz VA facility. This case has several issues of material fact and the District Court was granted summary judgment improperly and Henderson is entitled to a jury trial. I'd like to begin the discussion of the facts in this case using the McDonnell-Douglas method. Not to say that Mr. Henderson is putting aside or won't use the Ortiz method, or is asking the court not to, but just that it allows for more, or more readily lays bare the genuine issue of material facts in this case. Just very briefly, Mr. Henderson has brought claims for race and age discrimination and retaliation for prior protected activity. Now, as an initial matter, with respect to the McDonnell-Douglas factors, the agency has offered no argument either here, for this court, or below to contest that the appellant, Mr. Henderson, has established his prima facie case of discrimination in race, age, and retaliation. And again, proceeding under the McDonnell-Douglas formula, the next inquiry is that the agency must proffer, offer, articulate a legitimate non-discriminatory reason. And as this court has repeatedly recognized, this is not a high evidentiary burden for the defense or the agency in this case. You simply need to put forth competent evidence that they have a legitimate non-discriminatory reason. Well, the evidence in this case, if the court looks at the record, establishes that they have not done so. At least not in any sense of the word legitimate or articulate. So the agency in its brief offers the non-discriminatory reason that Chief Marsh, who was the deciding official in this case, selected the, selectee, Mr. Kerry Colby, a Caucasian male, over my client for a criminal investigator position because he had the highest score on a list of applicants that was compiled based on a panel review of a resume, and a review of, panel review of interviews, I'm sorry. Now, would the disciplinary records have been before Marsh when he made the following, the final hiring decision, and before the reviewing panel, when it initially scored candidates? With respect to the reviewing panel, no. Those factors would not have been before, in any sense of the word, the reviewing panels, either on an interview or on the resume review. However, there's evidence in the record that Chief Marsh was well aware of Kerry Colby's disciplinary record and had been informed of all of it prior to his selection. But in any event, getting back to what I was saying, there's no, the panel itself in the resume review, in the interview panel, is irrelevant. Because as I was saying- Actually, it's highly relevant and key to the case. Your biggest hurdle here is to overcome the fact that the interview panel was preceded by this blind graded resume review by a different panel, where the identity of the applicants was redacted and they were looking strictly at merit qualifications and doing a ranking based on objective factors. And based on that ranking, your client came in seventh, and they only interviewed three. So this just facially is a valid, non-discriminatory, legitimate reason for his exclusion from the candidate pool. And the fact that Marsh didn't move him up in the rankings over the person who actually came in first in this blind review, that is neither here nor there. And it's a completely racially neutral process. I would agree with your honor if the facts stop there, but they don't. The agency's own witness said that that entire process was negated when he himself testified that he pulled back the certificates because the agency had had them too long and canceled them, and his specific testimony was that they had to start over with new applications, new resumes, new panels, etc., etc. That testimony is not rebutted here, and is not rebutted below. So if things- But Marsh's unrebutted testimony is that he picked Colby because he scored first. Right, but- Your client scored seventh. I'm sorry, but cross-testimony again, an agency witness conflicts with that. He says no, the selection was not made according to the panel. It was not made according to the scores. It was made based on the VRA. Those scores did not matter after the certifications were withdrawn. Whether they technically mattered in terms of the agency's rules about how long the list stays viable, that's just a red herring here. If Marsh says, I picked him because he came first in this apparently expired selection process for compiling the candidate list. So even though it was technically expired, it doesn't make any difference. If that was the reason that he offered and there's nothing to contradict that, then you lose. I mean, respectfully, I disagree with that. I mean, if Cross testifies that the selections were not made, that is a conflict of facts that the- He was not the decision maker. He was intimately involved. Marsh was the decision maker. However, what Cross is saying is that Marsh did not make the decision based on those things. He made the decision based on the VRA and pulled him- Well, he's not competent to testify to that. I'm sorry? He can't testify to what was in Marsh's head. Well, he can testify to the events of what took place. I mean, if the VISN withdraws the certificates, there can be no selection. Right, that's what I'm saying. The process, the fact that the list expired, that's what Cross said. The list expired, we had to start over, right? That doesn't really matter if Marsh testified without contradiction that he picked Colby because he scored first in the blind scoring process and was recommended by both the resume panel and the interview panel. So- If there's nothing to contradict that, if he chose to use the expired list, that's what happened here, as I understand this record. No, I mean, I would say that that's an issue of fact for the jury to decide. Marsh says he used the list, the agency says he did not. Those are two conflicting facts that must be reconciled by a jury. What do you mean by this, the agency says he did not use the list? I'm into my rebuttal time here, I don't like to say that. I think you do have to answer my question. Okay, I'm sorry. The agency says, in the form of Mr. Cross, who is intimately involved with the process at the beginning, at the end, or in the middle and at the end. He pulls the certificates and says to Marsh and the local chapter, or local people at the VA, these are no longer valid, we have to start over. It doesn't make any difference. If Marsh says he disregarded that, and that is uncontradicted, he's the decision maker. He wants to use the list, he used the list. If he violated agency rules, he violated agency rules, but that's not a Title VII violation. If it's based on racial discrimination, it would be, Your Honor. But there isn't any evidence of that. I mean, we have five affidavits in this, plus that where one of them actually says he did use race in considering promotions and employment decisions with respect to the police department, also unrebutted and unaddressed. I'll give you another minute on your rebuttal. Thank you, Your Honor. Mr. Haley? May it please the court, counsel? This is a discrimination case, so we're looking at the motive that underlies the selection, which is at issue, and the plaintiff's argument confuses the selection process with the administrative means by which the selection was implemented. Mr. Halloway just said that he has affidavits showing that Marsh had a racially discriminatory animus. No, I don't think that's what is borne out in the record. They did present declarations from a number of individuals who had their own EEO complaint attesting to their personal belief that they had been subject to discrimination. And they don't know anything. If only Colby was allowed to act as a criminal investigator while the position was vacant, rather than allowing others to rotate in that position, wouldn't that taint the entire merit selection process? Can we say that Henderson would not have received a higher score if he had been able to list experience as a criminal investigator on his resume? Well, I think a couple of answers to that. One is that Chief Marsh was newly arrived at this facility in March of that year, so the time during which this investigator position was open and people were acting in it goes back to before Marsh's tenure. So those are things that were done by other people. Second, the evidence doesn't show that only Colby was allowed to act in that position. The testimony of Chief Marsh was that various people acted in that position, but the main one who did it was Colby. So for both those reasons, and Colby was somebody who had a lot of experience as a criminal investigator, which is detailed in his resume. Mr. Henderson had comparatively minimal experience as a criminal investigator, and in fact, he wasn't even doing the job of a detective for some time. You know, I keep wondering why we should even consider the result of the merit selection process given that Colby was not promoted pursuant to that process. Well, I think that's the plaintiff's main argument. And I think the answer to that is that you have to distinguish between the selection and then what HR did in order to implement that selection. You know, I imagine that you hire law clerks, and that when you do that, you conduct a review of resumes that come in to you, you interview candidates, and then you select the person who you think is the best person for the job. And then after that's done— The thing is, the merit selection process for law clerks, that's, you know, apples and oranges. Well, what I'm saying is just that that's your role in the selection process, and after you've made your selection, then you have people, I assume, just like we do in our office, who are human resources people that are experts  No, we don't. Okay. Well, it's common to have— Article III judges don't have anybody to respond to with regard to their selection. Well, there are a lot of different details that go in. So what's this business about he was only a GS-8 and never a GS-9? What's that have to do with anything? I don't think it has anything to do with anything. Why? Well, because the selection process consisted of the resume review and then the interviews, and at neither of those stages was the GS level, you know, what the people were looking at. They were looking at experience and competency. Well, they may not have been looking. It doesn't make any difference. Is there regulation or requirement that you can't move from GS-8 to GS-11? No, there's not. So the evidence is unrebutted that that's permitted. Is there a requirement before you move on? No, there's not. And that's why the human resources expert, Brian Cross, testified it's unrebutted that Colby was properly promoted from the GS-8 level up to the GS-11 level. Now, it's true that there are a lot of complicated rules here that can apply under the merit system promotion rules at the VA, and one of those that's in the record is that for internal VA candidates, they were supposed to have time and grade to be promoted to the GS-11 level, so he should have been at the GS-9 level or whatever the exact levels were. He didn't make it. So he was eligible to be hired at the GS-9 level. So this position, of course, was posted. You have me so lost that I don't know, because my understanding is, I think Judge Caney has the same understanding, that in order to be eligible for a GS-11 position, one must have been a GS-9 for at least a year. And Colby himself said he had no idea how the line highest grade, GS-9, came to exist on his resume, and that he never intended to represent that he had held a GS-9 position. And, of course, Cross says he didn't rely on Colby's resume when he mistakenly certified Colby for GS-9 eligibility, but he doesn't explain how he made that mistake. I really don't understand. Well, I think the best answer I can give to you is just to take a step back just for a second, and we can talk more about exactly why the grades were done the way they were and why that was proper. But rather than talk about that, I think we're better served by focusing on the selection. And the reason I was giving the example there is because, you know, it's common for decision-makers to interview people, hire people, and they do it based on the resumes and the interview. And then you have HR people who handle a lot of details here. And certainly that is what Chief Marsh testified to. He said, look, I wanted to hire the best person. I selected the top-scoring individual, and I hired him. I want him to be paid as much as possible. Isn't there a time and grade requirement, or is your GSA and the VA different than the GSA and general executive branch? Well, the time and grade requirement applies to internal candidates under the merit promotion rules. It doesn't apply to a person like Mr. Colby, who's a disabled veteran and has considerable experience outside of the VA. And that is what the human resources people told Chief Marsh. And the human resources ---- Well, Mr. Harrison was a Marine prior to the time he was serving, right? He was a veteran as well. Mr. Henderson also, he could have been eligible under those same rules. Yes, he was also qualified under those rules. So those are all technical rules that apply, and we can talk about those, but all that is happening after the selection is made. So the selection has been made, and now it's up to the HR people. Isn't there evidence that the decision as to who would serve as the interim acting criminal investigator was based on race, evidence that there were no black supervisors, that Marsh said he wanted to keep things black and white, that the employees called Hines the plantation, and that American Police Lieutenant Scott asked Marsh to rotate the position so that he and others could perform the job? And Marsh responded that it was probably the right thing to do, but he, Marsh, was not going to do it. So how do you deal with all those facts? You know, there are a lot of facts that you're talking about there, and I assume you're talking about some of the things that were said. You know, Judge, I actually don't remember all those facts being part of what was argued in the summary judgment motion, but the decision about who was serving in the acting role as the criminal investigator is a separate decision that predated all this. And the question of the selection here was based on the resume review and the interviews. And so there's no evidence to contradict Chief Marsh's testimony that he based his decision on the panel scoring. So if there are no further questions, I would ask that you affirm the judgment of the district court. Thank you, counsel. Here's an additional minute. You have two minutes. Very briefly, Your Honor. In response to the panel's question regarding whether or not time and grade would have applied to all applicants, at least internal applicants, it did apply to Colton. He had not yet served as a GS-9, therefore he was ineligible to be a GS-11, absent some other circumstances, which in this circumstance was the VRA. But prior to the selection being made, Henderson was the only candidate that was qualified for the GS-11 position. And just so we're clear, Chief Marsh on three separate occasions under oath said, I want this to be a GS-11 position. And it's also relevant that when he said those things, he was speaking to two of the affidavits that I've included in my submissions that were in the records. One was an African-American officer named Barnes, who has an affidavit, and one also was an African-American officer named Scott, who Marsh testified in his deposition, oh, no, you weren't eligible because you weren't a 9. The time and grade requirement can be satisfied by other relevant experience. That's a system-wide rule. For outside applicants. It's for others as well, as I understand the record. That's what was used here. Okay, because my understanding is that you can't. Under this VRA, whatever that stands for, this VRA alternative method of going to the list even though it was expired. Well, it is. Other relevant experience can substitute for the time and grade. Isn't that what the rules provide? It's not the way I understand it. Only for outside employees, what you're saying. They bring somebody from the outside who's never been a GS employee? Correct. And Mr. Colby, prior to the VRA selection, clearly was an internal employee who did not qualify for the GS-11 cert. Is that the rule for this VRA program? That's the question. Because that's the authority that the Chief was invoking here. To promote him. To promote him, yes. This VRA. So what are the rules of that program? I would say, Your Honor, that the time and grade restrictions, specifically identified in the beginning of the statute, are meant to keep things like this from happening. I'm asking how they apply in this VRA program. I would say that the selectee has to be. I'm not asking what you would say. I'm asking what the rules provide. What do the rules of the VRA program provide? Because it's undisputed that that's the hiring authority that the Chief invoked here. They provide that the applicant must be qualified for the position. They say nothing about the time and grade. Not that I've seen. There may be case law over at the MSPB that interprets that, but I haven't seen that. Thank you, Your Honor. Thank you, Counsel. Thanks to both counsel. The case is taken under advisement.